FILED & JUDGMENT ENTERED
Steven T. Salata

Feb 14 2014

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| JAMES WILLIAM BECHTOLD ) | Case No. 10-30013 |
| CAREN LEE BECHTOLD ) | |
| ) | |
| **Debtors.** ) | |
| ) | |
| ) | |
| LARRY M. STILES, Trustee for the ) | |
| Bankruptcy Estate of James William ) | |
| Bechtold and Caren Lee Bechtold, ) | |
| ) | |
| **Plaintiff** ) | Adversary Proceeding |
| v. ) | No. 13-03046 |
| ) | |
| ANTHONY LEON VADEN, TERRI ) | |
| SHELTON VADEN, PARK AVENUE ) | |
| REALTY, A/K/A PARK AVENUE ) | |
| PROPERTIES, L.L.C, KELLER- ) | |
| WILLIAMS REALTY, A/K/A KELLER ) | |
| WILLIAMS REALTY, INC., NORBERT ) | |
| BECHTOLD, LORELEI THOMPSON ) | |
| A/K/A/ LORI THOMPSON, ) | |
| ) | |
| **Defendants** ) | |

**ORDER**

This matter is before this Court on the following:

1

1. Anthony Leon Vaden's and Terri Shelton Vaden's (the "Vadens") Motion to Dismiss or in the Alternative Motion for Summary Judgment,

2. Lake Norman Cornelius, NC, LLC, d/b/a Keller Williams Realty Lake Norman ("Keller Williams") Motion to Dismiss, as Amended,

3. The Vaden's Motion to Join [Keller Williams'] Amended Motion to Dismiss,

4. The Trustee's Motions to Extend Discovery, and

5. The Trustee's Motion to Extend Time to Respond to [Keller Williams'] Summary Judgment Motions.

Hearings on these motions were held on October 17, 2013. John Taylor appeared on behalf of the Trustee; Dave Badger appeared on behalf of the Vadens; and Cotten Wright appeared on behalf of Keller Williams.

For the reasons set forth below, the Moving Defendants' Motions to Dismiss are **DENIED, IN PART**, and **GRANTED IN PART**; the Trustee's Motion to Extend Discovery is **DENIED**; and the Trustee's Motion for an Extension of Time to Respond to the Summary Judgment Motion is **GRANTED**.

## Facts[1] and Procedural Background

On January 5, 2010, the Bechtolds filed a voluntary Chapter 7 petition in this judicial district. Larry M. Stiles was appointed Trustee for the Bechtolds' bankruptcy estate ("Trustee"). At that point in time, the Bechtolds owned a residence located at 18700 Bluff Point Road, Cornelius, North Carolina (the "Residence").

The Bechtolds originally purchased the Residence in 2007 as an investment property. They paid $825,000.00 for the property and then spent an additional $900,000.00 to $1,000,000.00 remodeling it. In the fall of 2007, before the remodeling was complete, the Bechtolds listed the Residence for sale at a $2,000,000.00 asking price.

---

[1] These being motions to dismiss, the factual averments of the Trustee's Complaint are assumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009).

2

The Residence remained listed but unsold through December 2009. By that point in time, the asking price had been reduced to $1,300,000.00.

In the months before filing bankruptcy, the Bechtolds took the Residence off the market and moved in. In the Schedules filed with their bankruptcy petition, the Bechtolds valued the Residence at $750,000.00 and further disclosed secured debts on the property of $739,594.00. The $10,406.00 of apparent equity in the Residence was exempted by the Bechtolds under the North Carolina real estate exemption, N.C. Gen. Stat. §1C-1601(a)(1) (2013).

One month later, on February 4, 2011, the Bechtolds relisted the Residence at an asking price of $999,999.00. The property was listed through a broker, Park Avenue Properties, L.L.C. ("Park Avenue") and advertised in the local multiple listing service ("MLS"). The MLS listing contained the following notice:

> Approved Pre Foreclosure! Bankruptcy attny, owner & lender [sic] have agreed so we do not need lender approval. Seller can sign/close offer. This magnificent, custom home was $1.4 a year ago & 1.8 just before that…This home is in immaculate condition and we are priced way below current market value.

Seven days later, on February 11, 2011, the Bechtolds received a written offer to purchase the Residence from the Vadens for the full asking price of $999,999.00. The Bechtolds accepted the Vadens' offer and the sale closed at the end of March 2011.

At closing, and from the sales proceeds, the Bechtolds' two mortgages (totaling $860,022.26) were retired, commissions were paid to each realtor ($39,999.96 to Park Avenue and $29,999.97 to Keller Williams, the Vadens' broker), other closing costs totaling $4,504.75 were satisfied, and a total of $10,362 was distributed to Norbert Bechtold and Lorelei Thompson. The Bechtolds received $65,472.06 of net sale

proceeds.

Unfortunately, the Bechtolds did not inform the Trustee, or even their own attorney, of these matters. They did not seek court approval of the sale. And they did not turn over to the Trustee the monies that they took home from closing.

The Trustee discovered the unauthorized sale of the Residence a month later, on April 29, 2011. When he did, the Trustee obtained an emergency order against the Bechtolds freezing the net sales proceeds. By this point, the Bechtolds had spent $25,472.06 of the net proceeds, but they escrowed the remaining $40,000. On April 19, 2012, the $40,000 was ordered to be turned over to the Trustee and the Trustee was given a money judgment against the Bechtolds for the remainder. That judgment is unsatisfied.

On March 29, 2013, the Trustee filed this action (the "Complaint") seeking to avoid the (1) transfer of the Residence and (2) selected closing disbursements under 11 U.S.C. §549. The Complaint also seeks to recover the Residence (or its value), and some but not all, of the disbursements made at closing under §550.

**The Motions to Dismiss**

The Vadens and Keller Williams (collectively, the "Moving Defendants") seek dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6) / Fed. R. Bankr. P. 7012 ("Rule 12(b)(6)"), Fed. R. Civ. P. 12(b)(7) / Fed. R. Bankr. P. 7012(b)(7) ("Rule 12(b)(7)") and Fed. R. Civ. P. 19 / Fed. R. Bankr. P. 7019 ("Rule 19"). They seek dismissal on four grounds:

1. the Complaint fails to meet the pleading specificity requirements of *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007);

2. the unnamed mortgage lenders are "indispensible" parties who cannot now be joined as defendants (the limitations period having expired), such that the action must be dismissed;

3. by claiming the net sale proceeds from the Debtors, the Trustee has a) ratified the unauthorized sale; b) previously obtained complete relief; and c) legally precluded this avoidance action; and

4. because the Moving Defendants took for value, in good faith, and without knowledge, and the Trustee has not pled specific facts to show otherwise, the Complaint is barred by 11 U.S.C. §§ 549(c) and 550(b).

In the two Motions filed by the Trustee, he seeks a ninety (90) day extension of the discovery period and a further thirty (30) day extension of his response deadline to a pending motion for summary judgment filed by Keller Williams. Keller Williams objects.

## DISCUSSION

### Standards Applicable to Rule 12(b)(6) Motions

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Factual allegations in the complaint must be accepted as true when courts are considering Rule 12(b)(6) motions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

I. **With one Exception, the Complaint Adequately States Claims upon which Relief can be Granted under 11 U.S.C. §§ 549 and 550.**

The Moving Defendants first assert that the Complaint fails the pleading requirements of *Twombly* and *Iqbal*. *See* 550 U.S. 544, 556 U.S. 662. Under these authorities, "[t]o survive a Rule 12(b)(6) motion, '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 555, 570. The Supreme Court has also held, on the same topic, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

The Moving Defendants deem the Complaint to be so vague and conclusory that it fails the *Twombly* standard.

This Complaint is poorly drafted and confusing. It will require substantial revisions relating to the §550 claim in order to specify what was transferred to whom and what is being demanded from each Defendant. However, due to the simplicity of the applicable statutes and the applicable pleading burdens placed upon the parties, the Complaint is not so deficient that it should be dismissed.

**A. Pleading 11 U.S.C. §549.**

The avoidance statute is straightforward and concise. 11 U.S.C. §549 provides that, "the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2)(A) that is authorized only under section §303(f) or §542(c) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. §549 (2013).

6

Given the simplicity of the statute, in order to state a claim under §549, one need only plead four factual elements: "(1) a transfer, (2) of property of the estate, (3) made after commencement of the case, and (4) that is not authorized under the Bankruptcy Code or by the bankruptcy court." *In re Merry–Go Round Enters., Inc.,* 400 F.3d 219, 224 (4th Cir.2005).

This Complaint meets these basic requirements. It alleges that the Bechtolds: (1) transferred (sold and deeded to the Vadens / distributed to the other defendants) (2) property of the estate (the Residence and its net proceeds), (3) after the commencement of the case (the filing and transfer dates are alleged) and (4) without authorization (pled and otherwise established in prior case rulings). Not only does the Complaint state a claim for relief under §549, none of the parties even disputes the truth of these matters.

The Moving Defendants criticize the Complaint for failing to make factual averments relating to §549(c). That provision prevents a trustee from avoiding a transfer of real property to a good faith purchaser without knowledge of the bankruptcy case who purchased for present fair equivalent value. 11 USC §549(c) (2013). The Moving Defendants say the Complaint lacks specificity as to how they had knowledge of the Bechtolds' bankruptcy case; acted in bad faith; why the Residence had a value in excess of its sales price; or why what they gave in return for their transfers was not of equivalent value.

While this Complaint has several deficiencies, this is not one of them. In the first place, the Complaint already contains factual assertions which, if true, suggest §549(c) is not applicable to this case. For example, the note referring to the bankruptcy lawyer and preapproval of the sale found in the MLS listing suggests that the Defendants may have

7

been on notice of the Bechtolds' filing. There are similar factual averments in the Complaint bearing on each of the other §549(c) elements.

However, even if the Complaint were silent as to these matters, it would make no difference. A plaintiff is not required to plead facts to disprove the applicability of §549(c). This subpart of §549 is an affirmative defense to be pled, if at all, by a defendant in its answer. *See* 10 *Collier on Bankruptcy* ¶ 6001.01 [3] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013.). At the end of the day, it may be that §549(c) bars avoidance; however, this isn't a matter that can be decided on a motion to dismiss.

**B. Pleading 11 U.S.C. §550.**

While the Complaint is adequate to support a §549 claim, it is seriously deficient when it comes to pleading a recovery claim under §550.

As noted, the early paragraphs of the Complaint describe the basic underlying facts pertinent to the Bechtolds, the Residence and the sale. Thereafter, the Complaint becomes nonspecific, conclusory, and quite confusing.

One reason is that the Complaint conflates the sale of the Residence and the subsequent disbursements of the sales proceeds, termed "Transfers". Complaint ¶ 39. Thereafter, it refers to all of the transfers as a unitary whole. Obviously, the Residence and the proceeds are not the same thing, although proceeds are derived from the sale of the Residence.

In like fashion, while the Defendants are treated individually in the first part of the Complaint, they are referred to collectively as the "Transferees" after paragraph 43.

8

While the Defendants' roles may be deduced from the Complaint, their actual involvement in these transfers receives scant attention. What little that is said is generally conclusory. For example, the Complaint avers:

- "the Defendants had actual knowledge of the Debtors' bankruptcy case." (Complaint ¶38); and

- "the Defendants are the initial transferees of the Transfers and are the entities for whose benefit the Transfers were made." (Complaint ¶47)

Finally, and despite the fact that each Defendant received something different from the sale/disbursements, when it comes to relief, the Complaint seeks the same recovery. The Properties or their value is demanded of each Defendant. The Complaint is not even pled in the alternative.

This unfortunate conflation of transfers and parties gives the appearance that the Trustee is seeking multiple recoveries for the same alleged injury. The Complaint appears to seek recovery of the Residence (or its value), plus selected portions of the proceeds derived from its sale while, presumably, retaining the net proceeds already recovered from the Debtors. (This prior recovery is not mentioned in the Complaint). Such relief is not permitted.

While the Trustee enjoys considerable discretion as to which transferee recovery is sought under §550(a),[2] he is nevertheless limited to a single satisfaction under §550(d) and he cannot recover from subsequent transferees anything more than they received. Here, it appears that a total recovery is to be had of each Defendant, even though some of the Defendants received only a minor portion of the sales proceeds.

---

[2] The property or its value may be recovered from the initial transferee, the entity for whose benefit the transfer was made, or the immediate or mediate transferee of the initial transferee.

9

At a minimum, the Complaint must be amended to state precisely what was transferred to each Defendant and what is sought from each under §550. The previous recovery from the Debtors and how it factors into this recovery action should also be alleged.

### C. Other Asserted Pleading Deficiencies

The Moving Defendants also argue that the allegations of the Complaint contradict matters subject to judicial notice, to-wit, the fact that the Trustee has already recovered most of the net sales proceeds from the Debtors. The Moving Defendants cast this as a pleading deficiency; however, their contention is related to their ratification of sale argument. These and the equitable arguments will be considered in Part III.

### II. The Mortgage Lenders are not Indispensible or Even Necessary Parties.

The Defendants also seek dismissal due to the Trustee's failure to name the two mortgage lenders as defendants in this action.

Under Rule 12(b)(7), an action may be dismissed for failure to join an indispensable party under Rule 19. Fed. R. Civ. P. 19 ("Rule 19"). Whether a party is indispensable to the action involves a two-step inquiry. *Owens–Ill. Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir.1999). First, we ask whether the party "necessary" under Rule 19(a). *Id.* A party is "necessary" if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or
>
> (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a

>  substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1).

If a necessary party cannot be joined, the question becomes whether that party is "indispensable" under Rule 19(b). If indispensable, the action must be dismissed.

The following factors measure whether a party is "indispensable:" (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice could be lessened or avoided; (3) whether a judgment rendered in the person's absence would be adequate; and whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. Fed. R. Civ. P. 19(b).

The moving defendant has the burden to demonstrate that a party must be joined for just adjudication. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005). Further, dismissal for nonjoinder is a drastic remedy, to be employed sparingly. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Rite Aid of S.C. Inc.*, 210 F.3d 246, 250 (4th Cir.2000) (*citing Teamsters Local Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir.1999)). In making this inquiry, this Court is obliged to accept as true the allegations of the complaint. *Buttar v. Nov.*, No. 3:10–cv–668, 2011 WL 2375492, at *7 (W.D.N.C. June 9, 2011) (*citing Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n. 2 (7th Cir. 2001)).

Here, the Moving Defendants contend that the Trustee cannot maintain this action without seeking relief against the mortgage lenders who received the bulk of the sale proceeds. The statute of limitations to sue the lenders under §§ 549 and 550 has long

11

since expired. *See* 11. U.S.C. §§549(d) and 550(f). Thus, the two mortgage lenders cannot be added to this action. Therefore, the Moving Defendants argue, the action may not be maintained as to the named defendants.

Most bankruptcy "claw back" actions involve some inequities visited on one party or another. Requiring a preference defendant to repay payments received on account of a valid debt is inequitable to the transferee, but entirely fair to the body of creditors. The Trustee's election to sue the buyers and selected transferees, but not the mortgagees who received most of the sales proceeds, certainly has an inequitable feel. However, it is not actually unjust given the scheme of the Code, and the absent lenders cannot be said to be necessary or indispensible parties.

§549 defines an avoidable post petition transfer, but it does not prescribe who must be sued for avoidance. To maintain an avoidance action under §549, the trustee need only name as a defendant one of the persons or entities potentially liable for recovery under §550. *In re Grube*, 500 B.R. 764, 772 (Bankr. C.D. Ill. 2013). Even then, not all potential §550 defendants need be named, and as mentioned above, it is the trustee's option which of the transferees/beneficiaries to sue. *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.),* 874 F.2d 1186, 1194 (7th Cir.1989).

In the present case, each of the named defendants is either an initial (the Vadens) or an immediate transferee of the Residence (the other Defendants) and is potentially liable to the estate for what it received from the closing under §550. The statutory requirements are met without joinder of the secured lenders.

A second reason mitigates against treating the mortgagees as necessary or indispensible parties to this action: the two mortgagees were fully secured creditors.

With only a few exceptions that are inapplicable to this case, a Chapter 5 avoidance action may not be maintained against a fully secured creditor. *See In re Alabama Aircraft Indus., Inc.,* 11-10452 (PJW), 2013 WL 6332688, at 2 (Bankr. D. Del. Dec. 5, 2013) (*citing* 5 *Collier on Bankruptcy* ¶ 547.03 (16th ed. 2010) ("Generally, payments to a fully secured creditor will not be considered preferential because the creditor would not receive more than in a chapter 7 liquidation.")).

§549(b) prevents depletion of the bankruptcy estate by unauthorized transfers of its property. It has a restorative purpose, not a punitive one. §549 is meant "to ensure that similarly situated pre-petition creditors are treated even-handedly." *In re C.W. Min. Co.*, 477 B.R. 176, 184 (10th Cir. BAP, 2012), (*quoting Butler v. Anderson (In re C.R. Stone Concrete Contractors, Inc.)*, 462 B.R. 6, 27 (Bankr. D. Mass. 2011)).

§549(a) allows a trustee to avoid only "a transfer of property of the estate." §541 defines property of the estate as "interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). In the avoidance context, "property of the estate" includes only the debtor's equity in the property after consideration of all liens and encumbrances. *In re Ramba, Inc.*, 437 F.3d 457, 460 (5th Cir. 2006); *In re Bean*, 252 F.3d 113, 117 (2d Cir.2001); *In re Mahendra*, 131 F.3d 750, 755 (8th Cir. 1997); *see also United States v. Rauer*, 963 F.2d 1332, 1337 (10th Cir. 1992) ("Any portion of a debtor's property that is unencumbered by mortgage—the equity is part of the bankrupt's estate.").

Moreover, by virtue of §502(h), should a transfer of estate property be recovered under §550, a resulting claim is placed in the same legal position as "if such claim had arisen before the date of the filing of the petition," meaning it is still considered a secured

13

claim. If a transfer that satisfies a secured claim were to be avoided, by virtue of §502(h), the bankruptcy estate would still owe the claimant a secured debt. As others have observed, there is, "little point in generating a flurry of paperwork to achieve the same result as has been achieved by [the unauthorized post-petition transfer]." *In re Dave Noake, Inc.,* 45 B.R. 555, 557 (Bankr. D. Vt. 1984).

Since an action against the mortgagees to recover the disbursements on their secured claims would be a fruitless undertaking, the two mortgagees are not necessary parties to this action, let alone indispensible ones.

**III. The Trustee's Recovery of a Portion of Net Sales Proceeds from the Debtors Does not Preclude the Present Action.**

The most interesting question posed by these motions is whether in collecting the net sales proceeds from the Debtors, the Trustee has foreclosed this avoidance action. The moving Defendants suggest that when the Trustee discovered the unauthorized sale of the Residence, he had two mutually exclusive alternatives: a) file an action to avoid the transfer under Section §549(a) and recover the Residence (or its value) under 11 U.S.C. §550, or, b) accept benefits of the unauthorized transfer by claiming the net sales proceeds from the Debtors. He opted for the latter course, and thereby ratified the sale including all of the costs and disbursements attendant thereto.

While they clearly believe this avoidance action "t'ain't fair," the Moving Defendants struggle to articulate a legal doctrine that would preclude it. They suggest a variety of potential reasons: it's an election of remedies issue; or the Trustee is pleading facts contrary to those facts previously established in the case; or it is a case of judicial estoppel with the Trustee acting in opposition to a position on which he previously prevailed; or it is a case of collateral estoppel; or even one of laches (because the Trustee

14

filed the action on the last day of the limitations period.)

However, the Moving Defendants can only cite to one case that might support their arguments. *See In re Bean*, 252 F.3d 113 (2d. Cir. 2001). In *Bean*, a Chapter 7 debtor sold real property without authorization, satisfied the two mortgages on the property out of the proceeds, and turned over the $59,949.35 of net proceeds to his trustee. After accepting the net proceeds, the trustee sued the two mortgagees under §§549 and 550, seeking to recover the sums paid by the Debtor to satisfy their secured debts.

The bankruptcy court entered summary judgment in favor of the trustee, avoided the transfers and ordered the lenders to return these unauthorized payments. The District Court reversed that ruling and entered summary judgment in favor of the two defendants. *In re Bean*, 251 B.R. 196, 200 (E.D.N.Y. 2000). The Second Circuit affirmed, with both appellate courts castigating the trustee for bringing such an action, which the District Court deemed to be a case of churning, and the Circuit court considered a case of rare audacity. *In re Bean*, 252 F. 3d 113, 116 (2d Cir. 2001).

The Moving Defendants maintain that *Bean* holds that a trustee who accepts net sales proceeds from an unauthorized post petition sale may not thereafter maintain an avoidance action against recipients of the sale proceeds. This Court does not read *Bean* to hold as the Moving Defendants suggest. For while the facts in *Bean* are facially similar to the present instance, there are several crucial distinctions between the two cases.

The first distinction to be drawn between this case and *Bean* is that in *Bean*, the defendants/transferees were fully secured creditors. As noted above, an avoidance action may not usually be maintained against a secured creditor. This is the primary holding of

15

*Bean*, with the appellate court declaring that there was no transfer of estate assets because Bean had no equity in the property that was transferred to the defendants. 252 F.3d at 117. By contrast, in the present case, the defendants are not secured creditors. While these parties may be able to establish affirmative defenses to the Trustee's action, these defenses would have to be pled (and proven) by the defendants under §§ 549(c) or 550(e), not §502(h).

A second significant distinction between *Bean* and this case relates to the sufficiency of the purchase price. In *Bean*, the Chapter 7 trustee admitted that the debtor's sale was for full value and that he could not have netted more if he had sold the property himself. 252 F.3d at 115. Our Trustee believes otherwise. As the Complaint notes, the Bechtolds obtained an offer for the Residence for the full listing price and only four days after it went on the market. This was a property in which the Debtors had almost $2.0 million invested, and which had previously been listed for sale at prices ranging from $1.3 million to $2.0 million. Further, the Bechtolds asserted in the MLS listing, "…we are priced way below current market value." It isn't surprising that the Trustee believes the Residence was sold to the Vadens for considerably less than its true value.

Additionally, in *Bean*, the trustee admitted that the closing disbursements were both reasonable and necessary. That is not true in this action. This Trustee is seeking to recover several of those closing costs including realtors' commissions. In *Bean* the realtor commissions were not at issue because the trustee had already recovered the same through a separate adversary proceeding. *See In re Bean*, 251 B.R. at 200, n. 3. As such, *Bean* does not answer the question of whether such payments are avoidable/recoverable.

Additionally, the Trustee's "no damage" stipulation in *Bean* implies that all of the other closing disbursements were reasonable and necessary. That too is in doubt in the present action as the Trustee seeks to recover unexplained disbursements to two of the Debtors' relatives (Norbert Bechtold and Lorelei Thompson).

Given these factual distinctions, the most we can apply in the present case from *Bean* is that: 1) an avoidance action may not usually be maintained against a secured creditor; and 2) a trustee who sues for avoidance where the estate has not been harmed may face sanctions and a denial of compensation.

This Court agrees with both principles, but other Code policies are also applicable in the present case. One is the aforementioned restorative nature of §§ 549 and 550. We cannot presently conclude that the bankruptcy estate has been made whole. The Trustee didn't recover all of the net proceeds of sale from the Bechtolds. We don't yet know if the Bechtolds' sale was for full value. We don't know whether all of the disbursements of the sales proceeds were appropriate and for value. These open questions point out why the Trustee's prior recovery of net sale proceeds from the debtors does not automatically preclude him from filing an avoidance action relating to the property sold by the Debtors.

A per se rule as the Moving Defendants suggest would force estates to make a Hobson's choice: (1) accept whatever net proceeds that the debtor still possesses from his improper transfer or (2) to forego these monies in favor of an avoidance action against the transferees. Opting for the former would leave the bankruptcy estate in less than a restored position, if (a) the property was sold below market value, (b) improper disbursements were made from the proceeds, or (c) the debtor had spent the net proceeds.

The latter choice would force an estate to disdain the "bird in the hand," in favor

17

of a judgment against the transferees that may or may not be collectible. Such a rule would also reward the debtor by permitting it to retain ill-gotten gains from the sale and thereby encourage unauthorized sales, again in disregard of the restorative nature of §549.

Given this, it isn't surprising that an exhaustive search of the case law reveals no cases decided under the Code adopting the 'election of remedies' rule suggested by the Moving Defendants.[3]

However, there is one case decided under the old Bankruptcy Act that bears on this situation, and it supports the Trustee. In *Thomas v. Sugarman*, the Supreme Court held that a trustee was **not** foreclosed from avoiding a debtor's fraudulent transfer of accounts receivable, simply because he had obtained a judgment against the debtor for a portion of the monies paid him by the transferee for his fraudulent assignment. 218 US 129, 129 (1910). For all of these reasons, it appears that this action is maintainable.

However, the Moving Defendants' have a point. Under the rule set down by cases like *Bean*, the Trustee may recover only whatever equity in the Residence that was lost due to the unauthorized sale, and he may only do it once. Having accepted most of the net sale proceeds, and having benefitted from having the two mortgages retired, the Trustee may not now recover the Property, plus the disbursements of sales proceeds, plus the net proceeds held by the Bechtolds. To do so would be a great windfall for the estate and a great injury to the Defendants, particularly the Vadens. It may turn out that the maximum recovery of the Trustee in this action will only be the $25,472.06 that the Debtors spent. The Trustee should bear this in mind in prosecuting this action, lest the

---

[3]And, of course, this can't be laches since the action was filed within (if only by one day) the applicable statutory limitations period.

18

costs of litigation outstrip any recovery.

For now, the Court will require the Trustee to Amend his Complaint as stated above, and **GRANT** the Defendants Motion to Dismiss to the limited extent that the action seeks recovery of the Residence itself. Otherwise, the Motion is **DENIED.**

### IV. The Trustee's Motions to Extend Discovery and Time to Respond to Summary Judgment Motions

On the last day of the discovery period, and with a hearing on Keller Williams' Motion for Summary Judgment scheduled for hearing, the Trustee asked for a ninety (90) day extension of the discovery period and the dispositive motions deadlines. *See* Mot. to Extend Disc. Period and Time to File Dispositive Mots., Sept. 3, 2013, ECF No. 22. He then asked to extend his time to respond to Keller Williams' summary judgment motion until thirty (30) days after the conclusion of the extended discovery period. *See* Mot. to Extend Time to Respond to Mot. for Summ. J., Sept. 16, 2013, ECF No. 24.

Keller Williams opposes this relief, arguing that the Trustee has had two and a half years to investigate this sale; and further arguing that given the "fatal" flaws of the Complaint, additional discovery would be unlikely to provide additional relevant evidence.

While the Trustee says he needs additional time in which to conduct discovery and to file dispositive motions, he does not explain why. Nor does he satisfactorily explain why this discovery was not sought during the original discovery period. Lacking demonstrated cause, the Motion to Extend the Discovery Period is **DENIED.**

19

However, given that the Trustee's Complaint must be amended (and presumably, the Defendants' answers as well), a hearing on the pending Motions for Summary Judgment must be delayed. As such, the Trustee's Motion to Extend Time to Respond to Summary Judgment Motion is **GRANTED.** His response time is extended fourteen (14) days beyond the close date of the parties' amended pleadings. At that time, the hearing on the summary judgment motion may be re-noticed.

**SO ORDERED.**

This Order has been signed electronically.        United States Bankruptcy Court
The judge's signature and the court's seal
appear at the top of the Order.